*New-Haven,*
November,
1816.

Avery
*v.*
Stewart.

AVERY and another *against* STEWART and others.

THIS was an action on a promissory note of the following tenour :

" *Lisbon, December* 6th, 1815.

" For value received, we jointly and severally promise " *Samuel Avery* and *Son*, in sixty days from date, seven " hundred thirty-four dollars, seventy-six cents, in cotton " yarn, at ten *per cent.* below the wholesale factory prices, to " be delivered at the *Lisbon Cotton-Factory* store.

" *Josiah Rose*, as Agt. *L. C. F.*

" *Alexander Stewart.*"

The defendants pleaded in bar, that the 4th day of *February* 1816, was *Sunday* ; that on the next day, at noon, they gave notice to the plaintiffs, at *Norwich*, that they, the defendants, were ready to deliver said cotton yarn agreeably to the terms of the note, and requested the plaintiffs to attend at the *Lisbon Cotton-Factory* store, and receive payment ; that the plaintiffs

Where a promissory note, or other obligation, is payable in a certain number of days from the date, the day of the date is to be excluded in the computation of the time. Where a promissory note, not negotiable, was made payable *in sixty days from date,* and it fell due on

*Sunday*, it was held, that a tender on the *Monday* following was good. Where payment is to be made, by contract, in specific articles, on a day certain, though the creditor is entitled to a delivery in such season as to enable him to examine and take an account of the articles before sun-set ; yet if the debtor is present at the place of delivery, prepared, in all respects, to deliver the articles in sufficient season, and the creditor neglects to attend to receive them, a tender after sun-set, by day-light, will be good.

Where a promissory note was made payable " in cotton yarn at the wholesale factory prices," it was held, that evidence of the usage of manufacturers and dealers in that article, was admissible, to shew that by those terms was meant a certain scale of prices different from the *actual* wholesale prices *in market.*

*New-Haven,*
November,
1816.

Avery
*v.*
Stewart.

refused to attend for that purpose, and declared that they would have nothing to do with the business ; that the defendants, having waited at the store until the uttermost convenient hour of the day, did then, *viz.* between 3 o'clock, P. M. and sun-set, offer and tender to the plaintiffs, in cotton yarn, of a good and merchantable quality, warp and woof, at ten *per cent.* below the wholesale factory prices, in value seven hundred thirty-four dollars, seventy-six cents, that is to say, 10 *lb.* No. 20.—10 *lb.* No. 19. &c. [specifying the numbers, and the weight of each,] in full payment and satisfaction of the note in suit ; which the plaintiffs refused to receive ; and that the defendants carefully deposited said yarn, thus tendered, in said store, and there left the same for the use and benefit of the plaintiffs, as their proper goods and estate. The plaintiffs traversed this plea ; on which issue was joined.

The cause was tried at *New-London, September* term 1816, before *Edmond, Brainard* and *Gould,* Js.

On the trial, it was claimed by the plaintiffs, that by the words in the note " at ten *per cent.* below the wholesale factory prices," was meant by the parties, ten *per cent.* below the *actual* wholesale prices of cotton yarn *in the market,* at the time when the note became due ; and they offered evidence, on their part, to shew what the wholesale factory prices in market actually were at that time.

The defendants, on their part, contended, and offered evidence to prove, that long antecedent to the execution of the note in suit, the manufacturers of cotton yarn in this state, and in the neighbouring state of *Rhode-Island,* at their several factories, had, for the benefit of their trade, and to render that branch of business more useful, a common usage, by which all cotton yarns manufactured for sale, were to be assorted, by a standard, according to their weight and quality, and packed in bundles, and numbered, with printed tickets or labels annexed, designating the number ; that the price of number 12 was eighty-four cents, and to each number above 12 there was an addition of four cents, and from each number under 12 a deduction of three cents ; and that the tariff so adopted was advertised, published and set up in all the cotton yarn factories, and designated by the appellation of " *The wholesale factory prices,*" which was well known to the parties at the time of making the contract.

And the defendants claimed, that by the words " ten *per cent.* below the wholesale factory prices," was meant the wholesale factory prices designated by the tariff.

*New-Haven,*
November,
1816.

Avery
*v.*
Stewart.

The plaintiffs further claimed, and introduced evidence to prove, that the pretended tender of cotton yarn made by the defendants, was actually made on the 5th day of *February* 1816, after sun-set, at so late a period that the plaintiffs could not have had time to take an account of the yarn.

The defendants then introduced evidence to prove, that on the forenoon of that day, they called on the plaintiffs at *Norwich,* and informed them, that they, the defendants, should, on the same day, at the *Lisbon Cotton-Factory* store, tender the yarn specified in the note ; and that the plaintiffs replied, they should do nothing about it.

The charge of the court to the jury was as follows : " Whether the quantity of cotton yarn offered was sufficient to meet the contract, must depend, in some measure, upon the price at which it was to be delivered. If by *wholesale factory prices,* was meant by the parties, the *ticket* prices, and a tender was actually made by the defendants on the 5th day of *February* 1816, of a sufficient quantity of cotton yarn, according to those prices deducting ten *per cent.,* and of the stipulated sorts and quality, as alleged in the plea in bar, your verdict will be for the defendants, though the yarn tendered would not, according to the actual wholesale market prices, with such deduction, amount to the full sum expressed in the note. And if by the *wholesale factory prices,* was meant by the parties, the actual wholesale market prices, at the time when the yarn was to be delivered ; yet if there was a sufficient quantity tendered to satisfy the note according to the actual wholesale market prices, after deducting ten *per cent.,* and of the stipulated sorts and quality, as alleged in the plea in bar, your verdict will, in that case also, be for the defendants. But if there was no actual tender as before stated ; or if the amount tendered would not, according to the first mentioned or last mentioned prices, be sufficient, after deducting ten *per cent.,* to satisfy the note ; your verdict will be for the plaintiffs. As to the time of day at which a tender must be made, where the day and place of payment are appointed in the contract, as they are in this case ; the court is of opinion, that if the debtor is ready to tender, and is present and waiting to make the tender, at the day and place, in season for making and

*New-Haven,*
November,
1816.

*Avery*
*v.*
*Stewart.*

completing the tender before sun-set, and the creditor is absent so that a tender cannot be made to him in person, a tender after sun-set, by day-light, is good."

The jury returned a verdict for the defendants. The plaintiffs moved in arrest of judgment, on the ground that the issue was immaterial. They also moved for a new trial, on the ground of a misdirection. The questions arising on these motions were reserved for the consideration and advice of the nine Judges.

*Cleaveland,* for the plaintiffs, contended, 1. That the day of the date of the note ought to be included in the computation of the time which it had to run; and in that case, it would become payable on *Saturday,* the 3d of *February,* and a tender on any subsequent day, would unquestionably be bad. *Castle & al.* v. *Burditt & al.* 3 *Term Rep.* 623.

2. That if the day of the date were to be excluded in the computation, the note would become due on *Sunday,* and a tender, to be available, should be made on *Saturday.*

3. That admitting the tender to have been made on the right *day,* it was not made *in proper season.*

4. That the court erred in receiving extrinsic evidence to shew what was meant by " wholesale factory prices," and in submitting that question to the jury as a matter of fact; the construction of a contract being matter of law only, and exclusively within the province of the court to determine.

*Halsey* and *Sherman,* contra.

SWIFT, Ch. J. Where a note, or other obligation, is payable in a certain number of days from the date, the day of the date is always excluded in the computation of the time. This note was, then, payable on the sixtieth day after the date, which, it is agreed, was *Sunday.*

It has been argued, that as this note was payable within sixty days, the defendant, as it was unlawful for him to tender payment on the last day, because it was *Sunday,* was bound to pay it on the preceding day. But where a note is made payable within a certain number of days, the promissor is not bound to tender payment till the last day; and no suit can ever be maintained against him for non-payment prior to the last day. Of course, a note payable within a certain number

of days, is payable on the last day in the same manner, as if that had been specified to be the day of payment.

*New-Haven*, November, 1816.

Avery
*v.*
Stewart.

If a note should be made payable on *Sunday*, in express terms, it would be void, because it would be a contract to do an unlawful act. But if it be payable at a future day, which, by calculation, is found to be *Sunday*, and the parties did not intend to make it payable on *Sunday*, then it would not be void. The question, then, is, if a note falls due on *Sunday*, whether the tender must be on the preceding or succeeding day. The obligor cannot be bound to tender on the preceding day; for no man is bound to perform a contract before the time of payment; and no action can ever lie against him for non-performance before that time. Though he cannot perform the contract on the day it falls due, because it would be an unlawful act, yet that does not exonerate him from his obligation. It would be unjust to subject him to pay damages for the non-performance of a contract when it was unlawful to do it. The only way, then, to do justice to both parties, is, to permit the tender to be made on the succeeding day; and this is conformable to a general principle of law, that where the obligor cannot perform a contract according to the literal terms of it, he shall perform it as nearly as possible. This violates no principle, and does justice to all the parties. I think, then, the correct rule is, that when an obligation falls due on *Sunday*, the obligor shall be bound to tender a performance of it on the succeeding day.

It is said, in the case of bills of exchange and negotiable notes, where days of grace are allowed, that they are by the custom of merchants, sanctioned by law, payable on the third day of grace; yet if that day happens to be *Sunday*, then they are payable on the preceding day; and that this principle applies to the case in question. But the same custom of merchants, which has indulged three days of grace after a note is due, if that day is not *Sunday*,—allows but two where it is *Sunday*; and it being an indulgence, it is perfectly consistent to require payment on the second day of grace, to avoid giving four days of grace: but this is a very different thing from requiring a note to be paid before it is due.

By the words " wholesale factory price," could not have been intended the *cash* price, but must have referred to some

general rule known to cotton manufacturers. It was, therefore, proper to leave it to the jury to ascertain by the evidence, as a matter of fact, what was the wholesale factory price.

The tender was made at a proper and reasonable time, under all the circumstances.

I would not advise a new trial.

TRUMBULL, J. was of the same opinion.

EDMOND, J. In this case, sundry exceptions are taken to the charge given to the jury; and there is also a motion in arrest, founded on the supposed insufficiency of the defendant's plea in bar.

I am satisfied with the charge given by the court to the jury; and should not advise a new trial on that account.

What is the legal import of the words " *wholesale factory prices*" used by the parties in the contract, was not the question; but, to *what standard*, by the use of those words, the parties intended to refer, by which to regulate the price of the cotton yarn.

Where there is an ambiguity, which cannot be satisfied without going out of the instrument, as where there is a devise to a person by name, and there is more than one of the same name; of a farm, and there are several answering to the same description, &c., it is a question of *fact*, not of *law*; testimony is admissible; and the question is a proper one to be submitted to a jury.

As to the tender. Where payment is to be made by contract, in specified articles, on a day certain, the creditor is reasonably entitled to such a tender as will enable him, if he chuse to do it, to examine the articles, and see whether they comport with the articles stipulated to be paid in quantity and quality, before he is bound to receive them, in satisfaction of his claim. If, however, the *debtor* is present at the time and place, ready to deliver the articles corresponding in all respects with the terms of the contract, in season for such an examination, and waiting for that purpose, and to make a tender, the *creditor* cannot have right, by any act or neglect of his own, to deprive the debtor of his privilege to make a tender in satisfaction of his debt in *all* that day; and that being done in the manner stated, the contract is not only reasonably, but literally, complied with,

*New-Haven,*
November,
1816.

Avery
*v.*
Stewart.

on the debtor's part; he is not chargeable with a breach of contract; and if the creditor suffers an inconvenience or loss, it is to be imputed only to his misfortune or negligence.

In respect to the construction of the words in the obligation, " *in sixty days from date.*"  By the plain import of the words, the day on which it is dated is excluded; otherwise, a note payable in one day from date, would be a note payable on demand, and a suit thereon might be instituted immediately.  With this construction, the sixtieth day from date was the *Sabbath;* and the question arises whether the note was payable on *Saturday* or *Monday?* If payable on *Saturday,* the plea in bar is insufficient; otherwise, not.

On which of the days a tender in such cases ought to be made, is not so important, in my view, as that the question should be settled and at rest.

It however appears to me, that *Saturday* was the day on which a tender ought to have been made, and that the rule should be so settled.

In a contract to perform within a stipulated number of days, it is not usual to enter into a minute calculation of the number of *Sabbaths* that may intervene, and which will go to make up the number of days agreed on.   The understanding of parties is, to take the days in succession as they arise, whether *Sabbath,* or not; and there is no more reason for casting the last *Sabbath,* than the first, out of the number. None, by the *terms* of the contract, are to be excluded; nor is an exclusion necessary to the execution or validity of the contract.   The *fair intent* of the parties to the contract is to be presumed to be (and there is nothing in the contract to rebut the presumption,) that it should be performed at a time when it might be *lawfully performed;* and that that time should be *in sixty* days is expressly stipulated, and will admit of no other construction.   The obligation as to the number of days is clear, explicit and unconditional.   The debtor's obligation is absolute.  He is, then, by the terms of the contract, to have the uttermost convenient time, within the number of days limited, in which the act can lawfully be done, and no longer.   To extend it to *Monday,* is to make a contract for the parties, not contemplated, and subjects the indorser, if any, to delay of notice of non-payment; for if the tender may be made in all *Monday,* the sixty-second day

will be the first day he can have notice, or a right of recurrence to the indorser.

I would therefore advise, that the plea in bar is insufficient, and that the motion in arrest ought to prevail.

SMITH, J. There is no doubt that a contract to be performed on a particular day of the month in future, which turns out to be *Sunday,* is to be performed on the day following. The only doubt which I have felt, in the present case, has been, whether the obligor, by contracting to perform *within sixty days,* has not bound himself, at all events, to perform *within* that time, so that if the last day is *Sunday,* he is still bound to do it within the stipulated period, by taking the last convenient legal time. But on reflection, I am inclined to construe a contract of this kind to be a contract to be performed on the *sixtieth day;* and if so, *that* being *Sunday,* it may be performed the day following.

BRAINARD, J. concurred fully in the opinion delivered by Ch. J. *Swift.*

BALDWIN, J. The day of the date being excluded, the note fell due on *Sunday.* The question then is, whether it was payable on *Saturday,* or on *Monday.* It is agreed, that bills of exchange and negotiable notes, which fall due on *Sunday,* are payable, and must be demanded, on *Saturday:* but it is claimed, that this is confined to negotiable instruments, which, by the law merchant, are limited to two days when the third falls on *Sunday.* But no adjudged case is adduced in support of it. I see no reason for such a distinction. The days of grace are now considered part of the time of credit; and a negotiable note for sixty days is as really a note for sixty-three, as it would be, if so expressed in any other instrument. The time of payment is, by computation, as certainly fixed, as if the day of the month was precisely named. When the time of payment is ascertained, the debtor is entitled to the uttermost convenient time to make it; and at that time, the creditor may demand it. Each has his rights. On *Sunday,* payment cannot legally be made. What, then, is the uttermost convenient time within which payment can legally be made? It appears to me, it is *Saturday;* for

if you withhold it till *Monday*, you extend the contract beyond the agreement of the parties.

This is analogous to the principles acknowledged by all, to be applicable to contracts to pay money into banks, to transfer stocks, &c. on a particular day. The party bound to pay or transfer, is entitled to the uttermost convenient time ; but that is limited to banking hours in the one case, and to the time the books are kept open in the other. This may be 12, or 2 o'clock, and the party is thereby cut short of a part of the day or time within which he stipulated to perform his contract. But he cannot, therefore, claim another day. That would extend the contract. So in this case, he is entitled to the uttermost convenient time within the sixty days in which payment could be legally made. It could not be legally made on *Sunday* ; therefore, it must be made on *Saturday*.

GODDARD, J. concurred in the opinion delivered by Ch. J. *Swift*, on all the points.

HOSMER, J. I concur with the Chief Judge, except in relation to the tender. I think *that* was too late.

The note was executed on the 6th day of *December* ; and was payable in sixty days from its date. If the day of the date is included, the note fell due on *Saturday* ; if it is excluded, *Sunday* became the sixtieth day, or day of payment. Where a person promises to do an act on a future day, which is *Sunday*, he knows that his promise cannot literally be fulfilled. It must be performed the day before, or the day after, the one prefixed. On which of those days is matter of construction. The correct principle, in my opinion, is this ; that the performance shall be as near to the agreement as possible, but must not include a longer period, than the one which the contract expressly assumes.

It is a general rule, " that when a computation is to be made from an act done, the day in which the act is done must be included." *Rex* v. *Adderley*, *Dougl.* 462. 464. *Castle & al.* v. *Burditt & al.* 3 *Term Rep.* 623. *Glassington & al.* v. *Rawlins & al.* 3 *East*, 407. The act which gives existence to a deed, is the delivery of it. Rejecting all considerations arising from usage, or the necessity of giving such a construction as shall render the deed available, the

day of the date of the promissory note under discussion, would be included. But the custom of merchants has settled the point differently. The day of the date is excluded from calculation. *Chit. on Bills.* 338. The note, then, being, by the express appointment of the parties, payable on *Sunday*, what is the legal construction of this promise? I answer, that the note became due on *Saturday*. The words of the contract are equally disregarded, whether the note is considered to have fallen due on *Saturday*, or on *Monday*. It cannot be construed according to the letter. The parties knew, that the note could not be paid on *Sunday*, and they must have intended it should be performed on the day precedent, or subsequent. Before I assign my reasons, in support of the opinion above expressed, I will consider the arguments relied on to shew, that the note was payable on *Monday*.

It is said, that where a person stipulates to do an act on a given day, if the law forbids the performance of it at the time, he may perform it as soon after, as is legally possible. This is, undoubtedly, a true position, if the legal impossibility of strict performance, arises posterior to the contract. *Shep. Touch.* 369. *Co. Litt.* 206. *a.* The question in the case supposed, is not, as it is in the one under discussion, what is the construction of the contract? But it is, whether the law does not exempt the party from a strict performance, which it has rendered impossible. It was contended, and with perfect correctness, that if a person agrees to do a lawful act, which circumstances render impossible to perform literally, he must execute his agreement, as near to the intent of the condition as he may make it. *Co. Litt.* 219. *a. b. Shep. Touch.* 369. That is, if a natural or legal impossibility prevent the performance according to the letter, he shall execute his contract pursuant to the spirit and intention of it. Nothing can be more equitable. But, whether the performance, in the case under discussion, is held to be on *Saturday*, or on *Monday*, the nearness of the performance with the time literally prefixed, will be precisely the same. The inapplicability of the rule consists in this, that it has no bearing on the material point of controversy. The question is not, whether the defendant shall fulfil his agreement as nearly to the letter of it as he may, and exactly according to its intent and spirit. If it were, the rule laid down would

*New-Haven,*
November.
1816.

Avery
*v.*
Stewart.

be apposite, and in point. But the only enquiry is, what is the legal effect of the note, as to the time of performance, —what the construction? Towards this question, the rule commented on has no direction.

It was said, that the *Sunday* on which the note was made payable, must be expunged from calculation. Why not, then, on the same principle, strike out all the *Sabbaths* included within the sixty days? It requires little discernment to see, that the above position proves nothing. It is merely an inference, and takes for granted the point in dispute. If the note, by legal construction, is payable on *Saturday*, the assertion is out of the question. But if *Monday* is the day of payment, the day before must be excluded from computation. The question recurs, which of those periods is the correct time of payment? And this is the point which remains to be proved.

Equally unfounded was another assertion, that the promissee would not expect, or be ready to receive, the article promised, until after the *Sunday* expressly appointed. This again is an inference founded on a *petitio principii,* a begging of the question in dispute. If the contract fell due on *Saturday,* by construction of law on the terms of the note, the party promising knew, that he must perform it on that day; and the promissee knew, that he must be ready to receive the article promised. But if, as the assertion presupposed, the note fell due on *Monday,* that was the time when the performance would be expected.

It was said, that no person can be compelled to perform his contract, previous to the time stipulated. If by this is intended only, that the performance of a contract cannot be demanded until the time of payment, according to its genuine intent and construction, has arrived, it is a mere truism, and not susceptible of dispute. But if the meaning is, that a contract, in the terms of it, payable on *Sunday,* includes the *Monday* succeeding before it falls due, it is a proposition I cannot admit, until it is substantiated by proof.

It was contended, that as the order to plead in four days, if the fourth day be on *Sunday,* includes the following day, so a stipulation to perform an act on *Sunday,* includes the *Monday* succeeding. This argument is founded on a supposed analogy, and to be of any avail, the analogy must be perfect. The comparison involves a consideration of the

words, the subject matter, the effects and consequences, and the reason and spirit of the subjects compared. I shall not trace the dissimilitude beyond a brief enquiry into the reason of the rule relative to pleading. In Lord *Coningsby's* case, 8 *Mod.* 21. a rule to plead was made on *Thursday*, giving the defendant four days. On the following *Tuesday*, the plea was deposited in the proper office. An objection was made, that *Sunday* should be included, and in that court, the plea should have been filed on *Monday*. But the court said, " these four days must always be reckoned such days wherein the defendant may plead, and when the offices are open ; the pleas which are put into the respective offices of the several courts, were originally pleaded in court ; and therefore, *Sunday* is never reckoned one of these days, because neither courts nor offices are then open." And in *Lee* v. *Carlton*, 3 *Term Rep.* 642. *Buller*, J. said, " in some instances, when any act is to be done by the party, in a limited number of days, as in the case of a motion in arrest of judgment, the party has four *law* days, when the court is actually sitting, in which to do it ; and in those cases, *Sunday* is not one, though it be an intervening day." But as to the business done out of court, *Sundays* are reckoned the same as other days. 20 *Vin. Abr.* 64. The different reasons applicable to the cases supposed analogous, demonstrate, that one is no example for the other. These are the principal arguments urged by the counsel for the defendants, and in my opinion, they fall entirely short of the proposition they were adduced to sustain.

I have already observed, that the performance of the contract should be as near to the letter of it, as it may be ; and that it will be equally near, whether the day of payment is considered as being *Saturday* or *Monday*. The other branch of my proposition is this, that it must not include a longer period than the one which the contract expressly assumes. In other words, the party promising must perform within the time prefixed. To enlarge the time of a contract, is *jus dicere, non dare*. If the contractor has appointed a day on which to perform, when, by law, he cannot, he did it with his eyes open, with full knowledge, that unless his agreement was void from the impossibility of performance, it could not be executed on the day prefixed. What, then, is the reasonable consequence ? As the party promising knew,

that his contract could not literally be accomplished, and as he knew likewise, that he must perform within the limits of the time assumed, he must have expected and intended to have fulfilled it on *Saturday.* This, in my judgment, is the fair legal construction. If it wanted fortifying, it would derive it from the well known maxim, a rule of some strictness and rigour, and the last to be resorted to, that the construction is to be most strong against the party promising. 2 *Black. Comm.* 380.

*New-Haven,*
November,
1816.

Avery
*v.*
Stewart.

A person is not always entitled to the full express time stipulated, in which to perform his agreement. If there be a contract to tender stock upon a day certain, " a tender of transferring may be made at the uttermost convenient time of that day, before the books are shut." 6 *Bac. Abr.* 454. And if it were a supposable case, that it was known by a person promising to do an act, that it would be lawful to do it in the former part of the day prefixed, but that all business in the latter part of the day was prohibited, would there exist a doubt, that he must perform before the forbidden time rendered it impossible ? Should not the person who has promised to pay a sum of money on *Sunday,* a day on which he knows he cannot perform his contract, be considered as stipulating to do it within the time limited, that is, on *Saturday ?*

This question, in respect of negotiable notes, has long since been answered in the affirmative. 1 *Ld. Raym.* 743. *Chit. on Bills,* 141. " By the custom of merchants, if a bill of exchange, including the three days of grace, falls due on *Sunday,* the holder must demand the money on *Saturday ;* and in case it is not then paid, must consider the bill as immediately dishonoured." I consider the three days of grace, which by usage are allowed in addition to the time stipulated, in bills of exchange, and promissory notes which are negotiable, as if they were expressed on the face of them. They are equivalent to three days superadded to the specified term, and in no respect to be distinguished. The usage of merchants is not, that there shall be three days of grace on bills, but if the last day happens to be on *Sunday,* there shall be two only ; but it is universal, and without exception, that there shall be three days of grace. By construction of this contract among merchants, in analogy to the common law, if the day on which the bill falls due, is *Sunday,* when it can neither be demanded nor paid, it shall be considered as payable on *Satur-*

day. The application of the rule to the present case, is obvious and forcible. Between a negotiable note becoming due on *Sunday*, and a note not negotiable payable at the same time, I perceive a distinction, but no essential difference. The construction, in my opinion, should be the same in both instances. It cannot comport with public convenience, that a different rule should prevail, in cases so very similar. It is much preferable, that there should be one uniform rule on this subject, than that a diversity should exist, which will embarrass mankind in their intercourse with each other, and may be a fruitful source of error and litigation.

The argument by a sheriff, when an execution, by the terms of it, expires on *Sunday*, that he should be indulged with the day succeeding to make return, would be, in my opinion, as well founded, as that of the promissor of a note made payable at the same time. But it is established law, that " if the return day of the writ be on *Sunday*, and the return appears to be made on that day, it will be bad; nor can it be made on any day subsequent." 1 *Back. Sher.* 259.

In fine, in my judgment, one uniform rule of construction on the point under discussion, is desirable. The person who promises to do an act, must, at his peril, if there has no impossibility arisen posterior to the engagement, perform within the time explicitly assumed. If a contract is stipulated to be performed on *Sunday*, the legal construction is, that it shall be done on the preceding *Saturday*. This is agreeable to the usage of merchants, in respect of bills of exchange and negotiable notes; an usage not arbitrary and founded on no reason, but bottomed on common sense and common law. And in this opinion I am more deeply confirmed, since no case has been adduced to shew, that a person has been allowed a period to perform in, beyond the express limitation of his contract.

GOULD, J. Upon the motion for a new trial, the question first in order, is, whether parol evidence was admissible, to show what was meant by the words, " wholesale factory prices" ? These words, I confess, would seem to me, *prima facie*, to import the actual wholesale market prices, at the factory. But if this, or any other similar term, is, by the common consent, and general usage, of all dealers in a particular branch of business, used in a different sense, and

so understood by their customers ; there can be no reasonable objection to a party's proving it by parol. It is like the common case, of any term of measure, or quantity, used, in particular places, or in particular branches of business, in a sense different from the common one ; and, like any other latent ambiguity, may be explained by parol evidence. The other question, presented under this motion, may be more conveniently considered after those, which have been raised under the motion in arrest of judgment.

Under the latter motion, the first enquiry is, on what day the note was, by the terms of it, payable? And upon this point the question is, merely, whether the day, on which it was executed, is to be included or excluded, in the computation? This, considered as an original question, is a mere question of intention. And therefore, without entering, at all, into the distinctions, discussed in the case of *Pugh* v. *Leeds*, and other similar cases, relating to *conveyances*,—it is sufficient to say, that those distinctions have no application to personal contracts, like the present. In such contracts, when payable at a given time from or after date, there can be no doubt, that, according to the understanding and intention of the parties, (which, if not contrary to the rules of law, certainly ought to govern the construction,) the day of the date is to be excluded. And this I take to be the true rule. Otherwise, he who gives an obligation this day, for the payment of money, one day after date, is suable *instanter*, though the contract imports to be payable in future ; and the appointment of a future time of payment is useless and void. In the case of bills of exchange and promissory notes, the day of the date is, confessedly, excluded ; and what difference can there be, in this respect, between a contract for the payment of money, and one payable in specific articles ?

According to this view of the subject, the note in question became payable on *Sunday*. But payment on that day, is prohibited by law. The question, then, arises, whether the tender should have been made on *Saturday* or *Monday*. It has been argued, that the debtor, in such a case, must, at his peril, pay or tender, at all events, *within* the time appointed. It would seem to me quite as reasonable, to say, that he cannot, in any event, be required to pay, nor the creditor to accept payment, *before* the time appointed. It is true, as to contracts, on which days of grace are allowed,

that if the last of those days is *Sunday*, payment must be made on *Saturday*. But the allowance of grace was, originally, a mere *indulgence*, which it might be very reasonable to qualify with greater strictness, than if it had been demandable, as a matter of right. At any rate, the allowance of grace is an anomaly ; and the rules, resulting from from it, are, of course, not to be extended by analogy.

Upon the whole, the doctrine, which appears to me most reasonable, is, that as *Sunday* cannot, for the purpose of *performing* contracts, be regarded, as a day in law ; it is, as to that purpose, to be considered, as stricken from the calendar : though *intervening Sundays* are, doubtless, to be counted, as in all other computations of time ; because they are not appointed for the *performance* of any *act*. And this distinction is analogous to the modes of computation, under the common rule for pleading in abatement. 3 *Term Rep.* 642. If this view of the question is just, it follows, that, in the note, on which the present action is brought, the *Monday*, on which the tender was made, must be considered as the *sixtieth* day, and of course, the true day of payment.

As to the time of day, at which the tender was made,— the point upon which it is said the jury were misdirected,— I cannot persuade myself, that the rule, requiring a tender to be made before sun-set, was ever meant to apply to cases, where the creditor is *absent* through the *whole* day. The rule was made for his convenience ; that he might have a fair opportunity to examine, compute, and take an account of, the money, or other property tendered. But if he will not appear, at all, at the place appointed, to avail himself of the benefit of the rule, he waives it : for it can be of no possible advantage to him. While at a distance from the place, where the property is, he can no more examine it, by daylight, than in the dark. And his right and opportunity to make a subsequent examination, is the same in the one case, as in the other.

I concur in the opinion, that neither of the motions can prevail.

Motion in arrest insufficient.

