Wood, J.
The plaintiff’s two notes, on which the suit is brought, are before us. On the part of the defendant, it is admitted that on October 30, 1835, he set apart at the Delaware factory a quantity of cloth, estimated to be worth $1,000, at the wholesale prices of that factory, and that on October 31, 1836, he set apart, from a large quantity previously set apart, at the same place, another quantity of woolen cloth, which, by estimate, at the same prices, also amounted to $1,0Q0-; that October 30, 1836, fell upon Sunday. That the cloth, so set apart and appraised, has been since carefully preserved, being intended for the payment of the two notes respectively. It is admitted also to be proved, that the wholesale 431] ^prices of the Delaware factory, as originally established, many years before the date of the notes, and while the factory was owned by Barrett, were graduated at a trade standard, twenty-five or thirty-three per cent, above the cash value; that they continued the same, and the cash value the same, at the time of the exccu *432 tion of the notes, and when the notes became due. It is proved the notes were given in part consideration for the purchase of the Delaware factory, at an unusually high price, and that it was understood, at the time the notes were given, between the defendant and Barrett, that the wholesale prices of that factory, as they then existed, were to furnish the standard of the prices of the woolen cloths so to be delivered. There is other proof, but it is not necessary to notice it, as it can have no special influence on any question made by the parties.
Two questions are raised by the counsel, upon this proof. First, it is claimed that both the tenders were insufficient in the value or amount of cloth. Second, that the tender on October 31, 1836, is insufficient in point of time, being too late.
It is claimed by the plaintiff’s counsel, that the fair wholesale factory price, mentioned in the said notes, must be reduced to the cash standard, as the value of the property. If this be so, the tender is clearly insufficient in amount, by from twenty-five to thirty-three per cent. t
But is such the law of this case? We see nothing-improper in referring to extrinsic evidence, to ascertain what was the wholesale, fair, factory price intended by the parties. Two prices are clearly established, as well known at the factory, and to the parties. There is a latent ambiguity in the note, it specifies neither the one nor the other, and which did tho plaintiff and defendant intend? The witness has informed us. The defendant bought the factory at an extravagant price, and it was understood the plaintiff was to take his pay in cloth, at the high wholesale prices of the same factory, which ¡mices were established by the plai ntiff himself. If the law did not permit this, the most flagrant injustice would unquestionably *result. But we are not without authority which, upon [482 other grounds, renders it clear that this evidence was competent to ascertain what “ scale of price” the parties intended by which to ascertain the value of this property, in which the notes were to be paid. In the case of Avery v. Stewart, 2 Conn. 69, it was decided by the Supreme Court of Connecticut, that whore a note was made payable in cotton yarn, at the wholesale factory prices, that evidence of the usage of manufacturers and dealers in that article was admissible to show that by those-terms was meant a certain scale of prices, different from the actual wholesale prices in market. And if such were not the law, it is very clear, in this *433 case, palpable injustice would be done. The evidence then shows, in amount, sufficient property was set apart. The next inquiry is, was the last tender too late ? October 30, 183G, when the note from its face fell due, was on Sunday. If these notes were mercantile paper, and the last day of grace was on Sunday, it is a settled rule, that it would fall due on Saturday, and demand of payment should be made on that day ; but in the same case of Avery v. Stewart, it was decided that where a promissory note, not negotiable, was made payable in sixty days from date, and it fell due on Sunday, that a tender on the Monday following was good. In a late case in New York, it was held, that when days of grace are not allowed, and the time for payment or performance specified in the contract falls on Sunday, the debtor may discharge his obligation on the following Monday. The court say they agree with Gould, J., that Sunday can not, for the purpose of performing a contract, be regarded as a day in law, and for that purpose should be considered as stricken from the calendar. 20 Wend. 206. The case of Avery v. Stewart is_ there commented upon and recognized as good law. We are disposed to yield to this authority, and it is decisive of the question in this case. This tender being in season, by which the property was sot apart and boxed up for the plaintiff, as upon the other note, the question does not arise, whether it would be a good defense for the defendant to prove he was at the place of payment, ready, willing, and with the ability 483] *to pay, but did not sot apart the property. If the defendant will give security, as the statuto requires, he may have judgment, otherwise judgment will be given for the plaintiff.†
Lane, C. J., dissented on both points.

The note was in these words:
‘‘$1,000. “ Delaware, October 30, 1827.
“ Eight years after date I promise to pay at the Delaware Woolen Eactory to E. Barrett, or order, one thousand dollars in woolen cloth at a fair wholesale factory price.”