CALVIN A. CRONINGER et al., Respondents, *v.* LEMUEL L. CROCKER et al., Appellants.

A tender by a vendor upon an executory contract of sale, of property to which he has not and cannot transfer a valid title, is not a good tender and will not relieve him from the consequences of a breach of his contract.

Where the contract requires the delivery of goods of a specified quality a tender of a larger quantity of different grades from which the vendee might, with great labor, select sufficient of the specified quality to meet the requirements of the contract, is not a sufficient tender. It is the duty of the vendor to make the separation and to tender only such as

the vendee is bound to accept; and a refusal to perform, save by such a delivery in bulk, is a breach of the contract, subjecting the vendor to an action for damages, and for any money paid or advanced upon it.

A tender of bulky articles, in performance of a contract of sale, must be made in reasonable time, so that, before the close of the day of delivery, the vendee may have the opportunity of examining the articles tendered and seeing whether they are such as he is entitled to demand.

Where daylight is required for the proper examination and assortment of the goods tendered, time should be given the vendee to make such examination before sunset.

At the time of executing a contract of purchase and sale made in Ohio, the vendees indorsed a note of the vendors for their accommodation and to enable them to perform the contract; which note was dated and made payable at B., in this State, and was, at its maturity, paid and taken up by the vendees at the request of the vendors. In an action to recover the amount advanced because of failure of the vendors to perform, (the objection not having been made that the money was paid upon the contract, and not upon and for the note), *held*, that the note was valid in the hands of plaintiffs against the defendants as a security for the repayment of the amount represented by it; and that as it was a New York note interest was recoverable thereon at the rate allowed by law in this State.

(Argued April 28, 1875; decided May 25, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment of the Superior Court of Buffalo in favor of plaintiffs, entered upon a verdict.

This action was brought to recover moneys alleged to have been advanced by plaintiffs upon a contract between the parties by which defendants contracted and agreed to deliver to plaintiffs " 30,000 pounds of Ohio grown fleece wool to be well washed and in good merchantable order and free from burrs, tags, etc." They also agreed to give plaintiffs ample time " to throw the wool, before sacking it, at some point not over ten miles from Tontogany, and not to have or to receive less than 8,000 or 10,000 pounds; place of delivery, Tontogany, Ohio." The wool to be paid for on delivery. The same " to be delivered at any time from 1st May, A. D. 1872, to 1st of July, A. D. 1872." At the time of making the contract, for the accommodation of defendants and to enable them

to raise money to purchase wool, plaintiffs indorsed a note of $5,000, dated and made payable at Buffalo, N. Y.; also a draft of $3,000. The amount was to be applied as payment for the wool when delivered. These were paid and taken up by plaintiffs at defendants' request, they promising to deliver wool in a few days. Defendants contracted for various mixed lots of wool, but did not pay therefor, and the owners, or lienors, refused to deliver until paid for, one lot contained about 10,000 pounds which, upon being "thrown" (*i. e.*, assorted), gave about 5,000 pounds of the quality specified in the contract. Other lots, amounting to about 27,000 pounds, plaintiffs' agent commenced to throw. After assorting about 20,000 pounds, from which about 15,000 pounds merchantable wool was obtained, the further assorting was forbidden by the owners until the wool was paid for. These various lots of wool were shipped to Tontogany in the names of the owners, they retaining possession and directing their agents in charge not to deliver until paid for; and some time between sundown and midnight of July 1st, 1872, at what time the evidence is conflicting, defendants made what was claimed to be a tender of the wool, they directing plaintiffs to pay the various owners. The larger lot was at that time locked up in a warehouse, the owner of which refused to let any one go in with lights to examine the wool as it would vitiate his insurance. It appeared that it was impossible to throw wool at night as the washed could not be distinguished from the unwashed, or the merchantable from the unmerchantable. Plaintiffs declined to take the wool as it was. Prior to this plaintiffs offered to take and pay for the wool contracted for, deducting the $8,000 advanced, and demanded it.

Defendants' counsel asked to go to the jury upon the question as to whether there was a tender of the wool according to the terms of the contract; as to whether defendants had the quantity specified at Tontogany ready to be delivered, and upon the entire case. This the court refused and directed a verdict for plaintiffs for the amount of note and draft, with

interest. It was admitted that the legal rate of interest in Ohio was six per cent. Defendants' counsel (as the case states) "claimed that the plaintiffs were only entitled to recover interest on said note at and after the rate of six per cent per annum." The court held they were entitled to interest thereon at seven per cent, to which defendants' counsel excepted. Further facts appear in the opinion.

*E. C. Sprague* for the appellants. The court erred in directing a verdict on the testimony of the two plaintiffs. (Gr. on Ev., §§ 386, 388, 390, 392, 393; *Smith* v. *Downs*, 6 Conn., 365, 372; *Moore* v. *Hitchcock*, 4 Wend., 292, 296.)

*H. C. Day* for the respondents. There was no sufficient tender of the wool. (*Isherwood* v. *Whitmore*, 11 M. & W., 346; *Avery* v. *Stewart*, 2 Conn., 69–74; *Starlup* v. *McDonald*, 6 M. & G., 593, 630; 43 E. C. L., 591; *Champion* v. *Joslyn*, 44 N. Y., 657; *Reed* v. *Bk. of Newburyh*, 6 Paige, 337; Chipman on Con. [Eaton's ed.], 259; *Clark* v. *Baker*, 11 Met., 186.)

ALLEN, J. Every fact upon which the plaintiffs' right of action depended was clearly and conclusively proved by undisputed evidence. Their right of recovery was substantially established by the admissions of the answer, and the testimony adduced by the defendant. The plaintiffs only recovered the sums advanced by them upon the negotiable securities made by the defendants, and to be applied at a proper time in part payment for wool thereafter to be delivered, pursuant to the agreement between the parties, with interest on such securities and the moneys paid thereon. The agreement was in writing, and was undisputed. By it the defendants agreed to sell to the plaintiffs, and to deliver to them at Tontogany in Ohio, between the 1st day of May, and the 1st day of July 1872, 30,000 pounds of Ohio grown fleece wools, well washed and in good merchantable order, free from burrs, tags etc., and to give them ample time to throw the wool before sacking, at

some point not over ten miles from Tontogany, and in quantities not less than 8,000 to 10,000 pounds, the wool to be paid for on delivery at the rate of seventy cents per pound. The plaintiffs paid in advance of the time for the delivery, $8,000 upon the note and bill of exchange of the defendants. This fact is admitted by the answer, and was proven by the defendant Purdy called as a witness for the defence, as well as by other witnesses, and was not controverted. The plaintiffs attended when notified by the defendants, at the places indicated by them, to "throw," that is to inspect and assort certain parcels of wool, which the defendants professed to own and proposed to deliver under the contract, and commenced "throwing" and sacking preparatory to shipping the same. They were prepared and willing to pay for the same by applying in part payment the $8,000 already paid, by surrendering the note and bill of exchange which they had paid and which they held as evidences of their payments, and paying the residue in money. They were compelled to suspend their operations by the interposition of adverse claimants to the wool, and a forbidance by the owners and those having liens upon it to its full value, to remove the same until the full purchase-price, or the liens thereon, were paid to the claimants.

The plaintiffs, prior to as well as on the first day of July, demanded a delivery of the wool called for by the contract, and were ready and willing and offered to pay for the same, but were unable to obtain a delivery of any part of it. Aside from the conceded inability of the defendants to perform the contract, and the insufficiency as well as the insincerity of those tenders of performance, all the evidence clearly shows that the defendants were in default in refusing to comply with the demand of the plaintiffs, and omitting to furnish and deliver the wool upon the offer of the plaintiffs to receive and pay for the same. Purdy, one of the defendants, although not denying the advance payments made by the plaintiffs, testifies substantially that he repudiated the claim of the plaintiffs to be allowed the same as so much paid under the contract, and for

the wool to be delivered, and exacted the full purchase-price in cash upon delivery. This was in direct contravention of the agreement of the parties.. That the plaintiffs in good faith, prompted probably by a desire to secure the advance payment of $8,000, were anxious and offered to perform upon their part, and used every reasonable effort to induce a performance and a delivery of the wool by the defendants cannot· be doubted. It was affirmatively proved by the plaintiffs, and was not contradicted by evidence on the part of the defendants.

On the first day of July, which was the last day for the delivery of the wool (the last day of June being on Sunday) the plaintiffs attended, and renewed their demand of the wool and offer of payment, but the defendants were unable to deliver the wool. The evidence, as well that given by the defendants as by and in behalf of the plaintiffs, is that at no time could the defendants have delivered a pound of wool upon the contract.

Three of the parcels of wool over which defendants professed to have control, and amounting in the aggregate unassorted, including that which was not delivered under the contract, to about 27,000 pounds, were owned by three different firms. The defendants had contracted to purchase and to pay for the same upon delivery, and the owners refused to part with the possession until they should receive their pay. The defendants were unable to and did not pay for that wool, or at any time become the owners of it. Another parcel of about ten or eleven thousand pounds, unassorted and not in a condition for delivery upon the contract between the parties, had been purchased by the defendant Purdy but had been paid for by bankers, who had possession of the same and a lien thereon for the cost, and refused to part with the possession except upon the condition that their lien should be discharged by the payment to them of the purchase-price. The plaintiffs could only obtain the wool by payment of the agreed price to the lienors and owners, and by losing the benefit of their advance payment, which they were not called

upon to do.   A tender of wool of which the defendants were not the owners, and to which they could not make a valid title, was not a good tender, and the plaintiffs were not compelled to accept the delivery of property as a performance of the agreement by the defendants to which the latter had not a perfect title.   Had the defendants made a formal tender, good in form, of the wool, the title of which was thus incumbered, or in third persons, it would not have availed to relieve them from the consequences of a breach of their agreement. (*Champion* v. *Joslyn*, 44 N. Y., 653; *Reed* v. *Bank of Newburgh*, 6 Paige, 337.)   There was in truth no tender or offer at any time to deliver wool which answered the call of the agreement, or which the plaintiffs were bound to accept.   If the defendants could have made a perfect title to all the wool which was the subject of the negotiations and of the alleged tender, which the defendant Purdy swears was all to which they had any claim, still no tender and offer of delivery was made in proper form to discharge the defendants from the obligations of their agreement, or to put the plaintiffs in default.   It was proved that each of the several parcels contained wool that was not within the description of the contract as to quality or condition.   It was the duty of the seller to assort the wool, and separate that which would answer the description of the contract from that which was unmerchantable and of an inferior quality, and to tender such only as the plaintiffs were bound to accept.   A tender of a larger bulk, from which the plaintiffs might with great labor have selected the quantity, and of the quality they had purchased, was an insufficient tender, and a refusal to perform the contract except by a delivery of wool in bulk, the good and bad mingled together, requiring labor to separate them, was a breach of the agreement, subjecting the defendants to an action for damages, and for the recovery of the money paid or advanced upon it.   (*Clark* v. *Baker*, 11 Met., 186; *Isherwood* v. *Whitmore*, 11 M. & W., 347.)

Another fatal objection to the only formal tender and offer of delivery made by the defendants is the time it was made,

and the situation of the property. The rule is that a tender of bulky articles in the performance of an agreement must be seasonably made, so that the person may have an opportunity to examine the articles tendered, and see that they are such as they purport to be, and such as he is entitled to demand, before the close of the day on which the delivery is to be made. Whether the tender should be made before sunset may depend upon circumstances, and does not appear to have been decided by the courts of this State. But when daylight is required for the proper examination and assortment of the goods tendered, there can be but little doubt that time should be given the tenderee for such examination before sunset and by daylight. The evidence is that wool can only be examined and its quality ascertained by daylight, and that the inspection of the quantity contemplated by this contract would require more than one whole day. The alleged tender was made by the defendants after ten o'clock at night of the first of July, the last day for the delivery, and they had only at that moment obtained the permission of the owner of a single parcel of the wool to make the tender, and whether that consent implied an assent to the delivery and removal of the wool by the plaintiffs, and a waiver of the condition of the payment of the price to the owner is not very apparent. The plaintiffs however consented to proceed at once to examine and accept the wool, or such of it as should be found to be of the quality and in the condition called for by the agreement, such as they were entitled to demand and have. But it had been deposited in a warehouse to which the parties were denied access by the owner upon the ground that the use of a light in the building would invalidate his insurance. There was neither time or opportunity to examine the wool tendered before the close of the day, even if the defendants had ability to make title to the wool. Aside from the positive agreement of the defendants the plaintiffs were not bound to accept the wool without an opportunity to inspect and sack it.

This tender was insufficient as unseasonably made, and also by reason of the fact that the wool was not accessible for the

purpose of examination and delivery at the time it was made. (*Avery* v. *Stewart*, 2 Conn., 69; *Startup* v. *MacDonald*, 6 M. & G., 593.)   At twelve o'clock on the night of the first of July the defendants surrendered the wool to the owners, and from that time had and claimed no right to it, or to acquire title to it.   On the second day of July the plaintiffs avowed their readiness then to receive any wool the defendants had to deliver on the contract, and the defendant Purdy who represented the defendants declined to talk or treat further with the plaintiffs on the subject.   A breach of the contract and a refusal to perform the same by the defendants was established by all the evidence, and there was no question of fact for the jury.   The evidence of Purdy, one of the defendants, proves that the defendants made no tender of the wool according to the terms of the contract, and that the plaintiffs had not refused to accept the wool agreed to be sold and to pay for the same; and that the defendants had not at Tontogany, or at any other place, wool of the quantity and quality specified in the contract and ready to deliver on the same, and that there was no bad faith, on the part of the plaintiffs, in the transaction; and these were the only specific questions on which the defendants asked to go to the jury.   The plaintiffs were entitled to recover damages for the non-performance of the contract to the extent of the moneys paid by them in part performance, and the verdict was properly ordered by the judge.

The only question as to the amount of the recovery is presented by the exception of the defendants to the rate of interest allowed upon the note of $5,000, making a part of the $8,000 paid by the plaintiffs.   The note was made and indorsed by the defendants, and indorsed and procured to be discounted by the plaintiffs simultaneously with the making of the agreement, for the accommodation of the defendants and to enable them to purchase the wool agreed to be sold. It was dated and payable at the city of Buffalo, in this State, and at its maturity was paid and taken up by the plaintiffs, at the request of the defendants, and retained by them to be

surrendered in part payment for the wool that should be thereafter delivered. It was a valid note in the hands of the plaintiffs against the prior parties thereto, who are the defendants in the present action, and as a security for the repayment of the amount represented by it. The note was a New York note, and interest was demandable thereon at the rate allowed by the laws of this State. It was not objected that the money paid was upon the contract and not upon and for the note, and that therefore Ohio interest was only allowable upon the money thus paid. The objection recognized the note as a valid security in the hands of the plaintiffs, and was to the allowance of seven per cent interest on it. The objection was properly overruled and interest computed according to the laws of this State.

The judgment must be affirmed.

All concur.

Judgment affirmed.