## HOUSTON *vs.* SHINDLER.[a]

The plaintiff and defendant bargained respecting the sale, by the former to the latter, of a quantity of lumber, piled apart from other lumber, on a dock and in view of the parties at the time of the bargain, and which had before that time been measured and inspected. The parties having agreed as to the price, the plaintiff said to the defendant, "*the lumber is yours;*" "*get the inspector's bill and take it to H., and he will pay you the amount.*" This was done the next day, and payment was refused. The price was over fifty dollars, and the plaintiff sued the defendant therefor in a justice's court; whereupon before the trial, R., the attorney for the plaintiff, and H., acting as attorney for the defendant, but without authority from the latter, settled the suit for forty-one dollars, and H. gave his check, post-dated one month, to R., on a bank, for the amount, and R. gave a receipt in full as for so much money. The defendant, with full knowledge of this settlement, took possession of the lumber and carried it to market. *Held*, 1. That the taking possession of the lumber by the defendant was a completion of the purchase, and obviated the objection of the statute of frauds. 2. That it was a ratification of the act of his agent, by subsequent assent.

The check having been dishonored by the bank, for want of funds, and H. the drawer being insolvent and having obtained his discharge in bankruptcy, *Held further*, that on surrendering the check, the plaintiff was entitled to recover for the value of the lumber, as for goods sold.

The *consideration* of a receipt is open to explanation.

THIS action was commenced on the 16th of November, 1842, in the justices' court of the city of Troy. It was an action of assumpsit for goods sold and delivered, and was tried under the plea of the general issue, and notice, and the plaintiff obtained judgment. The defendant appealed to the mayor's court of the city of Troy, and on the trial in that court the case was this : The plaintiff, being the owner of about 2070 feet of curled maple plank and scantling, which he had brought to Troy in a boat, and which after being inspected and measured was piled on the dock, apart from other lumber, met the defendant at the pile of lumber, when the following facts occurred. The plaintiff said to the defendant, " What will you give for the plank ?" The defendant replied he would give three cents a foot. The plaintiff then asked, " What will you give for the scantling ?" The de-

(a) See *S. C.* 1 *Denio,* 48; 1 *Comst.* 261.

Houston *v.* Shindler.

fendant answered, one and a half cent a foot. The plaintiff then said, " The lumber is yours." The defendant then told the plaintiff to get the inspector's bill of it, and carry it to Mr. House, who would pay it. The next day the plaintiff, having procured the inspector's bill, presented it to House, who refused to pay it, on the ground that the instructions he had received from the defendant did not correspond with the plaintiff's statement of the contract. There was no note or memorandum of the contract in writing, nor was there any evidence of a delivery or acceptance of the lumber, except as above stated. At the price agreed on, the lumber came to $52,51, no part of which was ever paid. The mayor's court instructed the jury, that if they were satisfied that it was the intention of the parties to consider the lumber delivered, at the time of the bargain, and that nothing further was agreed or contemplated to be done, in order to change the title in, or possession of the lumber, the plaintiff was entitled to recover; that the sale was not within the statute of frauds, and did not require any note or memorandum in writing, provided they should find from the evidence that there was delivery and acceptance of the lumber at the time of the bargain. The defendant excepted, and the jury found a verdict for the plaintiff, on which judgment was rendered in his favor. The supreme court, on writ of error to the mayor's court, affirmed the judgment. The case is reported 1 *Denio,* 48. The defendant brought a writ of error to the court of errors, which was argued in the court of appeals; and at the April term, 1848, the judgment of the supreme court was reversed by a vote of six to two, and a new trial ordered. The court of appeals decided that the above facts did not prove a delivery and acceptance of the lumber, within the meaning of the statute of frauds, and that the sale was therefore void. They held also that to constitute a delivery and acceptance of goods, such as the statute requires, something more *than mere words* is necessary. Superadded to the language of the contract, there must be some *act* of the parties, amounting to a transfer of the *possession,* and an acceptance thereof by the buyer; and that the case of cumbrous

articles is not an exception to this rule. The case in the court of appeals is reported in 1 *Comstock's Rep.* 261.

The cause was then tried at the Rensselaer circuit in February, 1849, before Mr. Justice Harris, when, in addition to the facts proved on the first trial, the following facts were given in evidence. It was shown that in July, 1842, the plaintiff employed Mr. Raymond, an attorney, to collect the accounts for the lumber sold the preceding year, and that Raymond brought an action against the defendant, in the justices' court of the city of Troy, to recover the said account. While the action was pending, and before trial, and on the 6th July, 1842, Raymond acting as attorney for the plaintiff, and Orla House, acting as attorney for the defendant, but without authority, settled that suit and cause of action for $41, and House gave his check, post-dated 6th August, 1842, to Raymond, on the Troy City Bank, for that sum, and Raymond gave to House a receipt in full as for so much money. House was indebted to the defendant on account, and the latter gave the former credit on book for the amount of the check as for so much money paid for him. The check was presented at maturity, but was not paid, the drawer having no funds there, and in fact he failed and was discharged under the bankrupt act. Between the time of that settlement and the maturity of the check (6th August) the defendant took possession of the lumber, and caused it to be transported to New-York. At the time he took it, he said "House had been and settled for the lumber against my orders, and now it is settled for, we may as well take the lumber off." House was present when the defendant made that remark.

After the lumber was thus taken away by the defendant, and the check had been protested and House had failed, to wit, on the 16th Nov. 1842, this action was commenced. On the trial in the justices' court the check was delivered up to be cancelled.

The defendant's counsel asked the judge to charge, that as the settlement of the suit between House and Raymond was without authority from the defendant, the defendant could not be made liable as on a contract of sale. The judge refused so to charge, and the defendant's counsel excepted.

**39**

The defendant's counsel also asked the judge to charge, that even if the defendant was liable to pay for the lumber, no action would lie until after the check was returned and the defendant notified that it was not paid. The judge refused so to charge, and the defendant again excepted.

The defendant's counsel asked the judge to charge, that if the jury believed Raymond was authorized to settle the suit, the receipt given by him in full, the acceptance of the same and credit of it by the defendant to House, upon the supposition that the money was paid by House to Raymond, as the receipt purports, the plaintiff could not sustain this action. The judge refused so to charge, and the defendant excepted. The defendant's counsel also requested the judge to charge that the lumber should have been demanded before suit brought, in order to sustain the action. The judge refused so to charge, and the defendant's counsel again excepted.

The judge charged the jury, among other things, that it appeared that House and Raymond assumed to act as agents for the plaintiff and defendant, in the settlement of the suit pending in the justices' court, and although they might have acted without authority from the parties, still their acts were binding, if subsequently ratified and assented to by them. And he left it to the jury to find, from the acts and declarations of the plaintiff and defendant, and especially from the defendant's receiving the lumber and directing it to be shipped to New-York, and his declaration to West, in the presence of House, that the parties to this suit had assented to and ratified the acts of Raymond and House; to which charge the defendant's counsel excepted.

The jury found a verdict for the plaintiff.

*J. Pierson*, for the defendant.

*J. A. Spencer*, for the plaintiff.

*By the Court*, WILLARD, P. J. The facts disclosed on the last trial obviate all the objections to the plaintiff's right of recovery, which existed when the cause was before the court of

appeals. As required by that court, the plaintiff showed, in addition to the language of the contract, the *acts* of the defendant in taking possession of the lumber and converting it to his own use. The statute of frauds therefore presents no barrier to a recovery.

The objection now is, that as the plaintiff's agent gave a receipt in full, for a worthless check, on settling the first suit, no subsequent action can be brought for the same cause. Although the receipt purported to be for "forty-one dollars in settlement of suit," it was competent for the plaintiff to show, in explanation, what was in truth received. The *consideration* of a receipt is always open to explanation. (*Eggleston* v. *Knickerbacker*, 6 *Barb. S. Court Rep.* 458.) In this case, the check for which it was given was of no value. The plaintiff acquired nothing from it. He had a right therefore to fall back upon his original cause of action, as if *nothing had been paid*.

Nor did the defendant lose any thing by crediting the amount of the check to House. He parted with no money or new consideration on account of it, but merely gave House credit for that amount on his book. This account against House is now as good as it was before such credit. It was probably worth nothing then or since, as House was insolvent in 1842, and subsequently obtained his discharge in bankruptcy.

If the judge was right in charging the jury that they might find, from the conduct of the parties, a ratification of the acts of their agents, there is no ground to disturb the verdict. The defendant, when he took away the lumber, well knew the nature and terms of the settlement. By taking it he assumed that the title to it was vested in himself. There can be no stronger ratification of the act of an agent, than the principal's availing himself of the benefit of such act, although unauthorized. (*Dunlap's Paley on Agency*, 171, *notes. Clark* v. *Van Riemsdyck*, 9 *Cranch*, 153. 4 *Mason*, 296. 17 *Mass. Rep.* 97.) It was well said by Spencer, Ch. J. in *Skinner* v. *Dayton*, (19 *John.* 554,) that "Both at law and in equity, the subsequent assent of the principal to the acts of the agent in relation to the interests and affairs of his principal, is equivalent to a positive and direct authorization to do the act."

As the judge was thus right in the direction he gave, he could not have been right had he charged as the defendant's counsel requested. The law gives no countenance to the legerdemain, by which an obligation can be discharged by a check of a bankrupt on a bank without funds to meet it.

The other exceptions were all frivolous. The motion for a new trial must be denied.

[MONTGOMERY GENERAL TERM, May, 1851—*Willard*, *Hand* and *Cady* Justices.]