ᴊᴏꜱᴇᴘʜ B. ᴄʜᴀᴍᴘɪᴏɴ, Respondent, *v.* ᴏʀʟᴀɴᴅᴏ W. ᴊᴏꜱʟʏɴ, impleaded with ᴡᴀꜱʜɪɴɢᴛᴏɴ S. ᴡʜɪᴛɴᴇʏ and others, Appellant.

An account rendered is not conclusive against either party, but may be impeached or corrected within a reasonable time. It is an admission, and *prima facie* evidence against the party making it, but does not estop him from showing the truth.

Evidence of the reason why certain items do not appear in an account rendered is immaterial. The party may show the fact that such items exist, notwithstanding their omission from his account, but is confined to the facts, and his reasons or motives for the omission are of no importance.

A tender implies not only an offer to do the thing proposed, but the power and willingness then and there to do it as offered. In no view is that a tender which the party has not the power or right to perform, in case his offer is accepted.

Yet his title to, or method of obtaining the thing tendered is material only so far as it affects his ability to make an actual and valid transfer, so as to vest the title in the other party, if his offer is accepted.

(Argued May 8, decided September 28th, 1871.)

ᴀᴘᴘᴇᴀʟ from an order of the General Term of the New York Court of Common Pleas, affirming a judgment entered upon a verdict in favor of the plaintiff.

The action was against the defendants Dorman, Joslyn & Co., brokers, alleging a balance due to the plaintiff, in brokerage transactions by them for him, on the 19th day of April, 1864, of $8,761.22, and payments thereon of $1,500, May 29, 1864, and $1,500, June 15, 1864, and claiming to recover $5,583.37, with interest from June 15, 1864.

The defendants, by their answer, admit that they were employed by the plaintiff as brokers in the purchase and sale of stocks for him, and received of and from him large sums of money; and they allege that they also paid and expended large sums of money to and for him, and amongst other sums the two amounts mentioned in the complaint.

By way of counterclaim, they allege that on or about April 14, 1864, by the direction of the plaintiff, they paid upon the purchase of 200 shares of the capital stock of the Rock

Island Railroad Company, for the plaintiff, the sum of $26,950, and that their commission on that purchase was twenty-five dollars, and that on the 26th of May, 1864, they tendered the stock to plaintiff, on the payment to them of the cost price and commission, less the sum of $8,761.22 due the plaintiff on prior transactions.

That the plaintiff failed and refused to take and pay for that stock, and on the 28th May, 1864, it was agreed that the defendants should retain the stock and credit the plaintiff $116 for each share thereof, amounting to $23,200, which amount was credited, leaving $3,775 due the defendants, and interest, and that the sums mentioned in the complaint were paid after the agreement, and that the sum of $3,775 is justly due the defendants, and they will set off the same against any claim of the plaintiff.

The plaintiff replied to the answer, and denied the purchase of the Rock Island stock, and averred that at the time of the assumed tender the defendants had no such stock; that the plaintiff was able to pay for the stock, and agreed to do so in the following May, and called and offered to pay for the same, and defendants failed to deliver it.

He denied the agreement alleged in the answer, that the defendants should keep the stock, and credit the plaintiff therefor. He denied that any advance was made by the defendants for the stock, as alleged, or that any amount was due the defendants.

Upon the trial the plaintiff gave in evidence an account rendered by defendants on 19th of April 1864, showing a balance due the plaintiff of $8,761.22, and rested.

This account showed a purchase, on the 14th of April, of 100 shares of Rock Island stock, and a sale of the same on the 19th of April, but did not show the purchase of the 200 shares mentioned in the answer.

The defendants gave evidence to prove the direction of the plaintiff to purchase 300 shares of Rock Island, on the morning of the 13th or 14th of April; the purchase of the same and the delivery thereof to the defendants and payment

by them therefor; and the sale and delivery of 100 of the shares for the plaintiff.

The defendants also gave evidence of the sale of the 200 shares to them, at $116, as alleged in the answer; of a subsequent sale by the defendants at $112, and that, before the purchase of the defendants from the plaintiff, and on the 20th of May, the stock was offered to the plaintiff, who could not pay for it.

After this proof was given, the counsel for the defendants asked the defendant Joslyn, then under examination as a witness, why the 200 shares of stock in dispute were not included in the account rendered on the 19th April; which was objected to, and the objection sustained, and the defendants. excepted.

The question was repeated in several forms and excluded, and an exception taken to each decision excluding the evidence

A question was then put as to the custom of brokers "in relation to rendering accounts to their customers, when a transaction is not closed;" which was objected to and excluded, and an exception taken.

Evidence was given by the defendants tending to prove a tender of the 200 shares of stock, and a refusal on the part of the plaintiff to take and pay for the same, and evidence was given by the plaintiff in reply.

Among other things the judge charged the jury that the defendants must, in order to discharge their employment, execute the order by purchasing the stock, and they must actually have been able to deliver, upon request, the number of shares of stock which they had undertaken to purchase, "and it must be stock to which they had a right—not stock the certificates of which he has borrowed, having no title to the stock, simply to go through the form of a tender."

To the last sentence the defendants excepted.

The court then stated in the presence of the jury "that that portion of the charge was not to be understood as meaning to relate to stock borrowed to make a tender, without either the right or the intention to transfer the stock; that a

mere showing of stock, where nothing more was meant or intended, did not satisfy the law on the subject of a tender."

*Aaron J. Vanderpoel,* for the appellant, cited *Lockwood* v. *Thorne* (18 N. Y., 285); *Stephen* v. *Vrooman* (18 Barb., 250); *Houston* v. *Shindler* (11 Barb., 36); *Williams* v. *Glenny* (16 N. Y., 389); Broom's Leg. Max., 419; *Burrow* v. *Catliff* (3 Scott, N. R., 1); *Smith* v. *Wilson* (3 Barn. & Ad., 733); *Spear* v. *Cooper* (12 B., 424); *Esterly* v. *Cole* (3 Comst., 502); *Blossom* v. *Champion* (37 Barb., 554); *Haslam* v. *Adams Exp. Co.* (6 Bos., 235).

*John Graham,* for the respondent, cited 1 Greenl. on Ev., §§ 292–4; *Hinneman* v. *Rosenbock* (39 N. Y;, 98); 3 Bouv. Inst., 14–19; *Lester* v. *Jewett* (11 N. Y., 453); *Des. Arts* v. *Leggett* (16 N. Y., 582).

HUNT, C. The account rendered on the 16th of April, 1864, was, at the most, but *prima facie* evidence that there were no other transactions which should properly form a part of it. (*Lockwood* v. *Thorne,* 18 N. Y. R., 285.) An account rendered is not conclusive against either party to it, but may be impeached or corrected, within a reasonable time after its rendition or its receipt. Should the balance claimed be actually paid, the account would still be open to correction in the same manner. (*Ib.*)

The defendants sought to prove that 200 shares of Rock Island railroad stock had been bought by them, for the plaintiff, upon his order, before that time, although the account contained no reference to them. This they had an undoubted right to prove, and if I appreciate the testimony, they were permitted to give all their proof offered on the point, without objection or restraint. The plaintiff gave proof in reply, and the question was submitted to the jury. The account rendered was thus examined and submitted to the jury for correction, upon all the evidence taken. Why the defendants had not included the 200 shares in this account, was unimportant. Perhaps, as alleged, it was customary to omit all

notice, in such an account, of transactions yet unclosed. Per-
haps, as suggested, the plaintiff had directed that it should
not be included. Whatever may have been the occasion, the
question still arose, had the 200 shares been purchased
prior to that time? The reason why they were not included
in the account was quite immaterial. If they had been
included, this would have furnished no evidence that they
had been actually purchased. That must still have been
established by him. The judge explained to the jury, that
the account was but *prima facie* evidence; the plaintiff gave
his evidence on this point; the defendants gave theirs. The
question was not as to motives, reasons, or mental operations,
but as to the fact. The declarations of a party are ordina-
rily evidence against himself. Ordinarily, he may show the
truth, notwithstanding his declarations. His motives and
reasons are not in question. It is the fact only, that is to be
looked for. I perceive no error, therefore, in excluding the
evidence offered to show the reasons of the defendants, not
communicated to the plaintiff, for not including these shares
in their statement, or the evidence offered to show the custom
of brokers on that subject.

Objection is made by the defendant to the allowance of a
question to one of the defendants on his cross-examination.
The witness had testified, that on the 25th of May, 1864, he
had offered the stock to the plaintiff, if he would bring a cer-
tified check for the amount due upon it; that he then had the
stock there at the time, and that the plaintiff could not make
the payment. On his cross-examination, he was asked:
" Where did you get that stock, did you go out and borrow
it?" He answered, that it came from a loan on the St.
Nicholas bank. The exception was to this question and
answer. No possible harm could arise from this answer, as it
showed the defendants in the possession of the stock, and
apparently authorized to use it. This was what the defend-
ants claimed. The answer aided their view of the case.

If, however, any doubt remained as to the defendant's
right to tender the stock, arising from the manner of obtain-

ing it, the point was fully provided for in the charge, which is also in this respect the subject of exception. The law, as laid down by the judge, in his charge upon the subject of the stock which could be tendered, was in this wise: " If the defendants tendered 200 shares of stock which they owned, or had the right to control, and the plaintiff could not, or did not pay for it and take the stock, the defendants performed their obligation." He had previously said: " It must be stock to which he has a right, not stock the certificates of which he has borrowed, having no title to the stock, simply to go through the form of a tender." To this the defendants excepted, and I think with reason. If the defendants had lawfully obtained the certificates, and were invested with the power to transfer them, it was of no consequence to the plaintiff whether they had borrowed them or were the unqualified owners. If the money had been paid, the title to the stock would have passed to the plaintiff, and he would have become the owner of it. The farthest authority in this direction, of which I am aware, holds that where a debtor has fraudulently obtained money, the creditor is not bound or authorized to receive it, and that a tender in such money is void. (*Reed* v. *Bank of Newburgh*, 6 Paige, 337.) When the attention of the judge was called to his language, he explained it by saying, that that portion of his charge was to be understood as relating " to stock borrowed to make a tender, without either the right, or the intention to transfer the stock." As thus explained, the instruction was correct. If the defendants had no right to transfer the stock to the plaintiff, if he had been willing to accept it, there could be no tender of it. A tender implies, on the part of the actor, an offer to do the thing proposed, and a power and willingness then and there to do it as offered. In no view is that a tender, which the debtor had not the power, or the right to perform, if his offer is accepted. Neither the exception to the evidence, or to the charge, is well taken. The judgment should be affirmed with costs.

EARL, C. (dissenting.) Upon the trial of this cause it was a controverted question whether the defendants purchased the 200 shares of stock on the 14th day of April, 1864, and, as such, it was submitted to the jury. The defendants claimed, and gave evidence to show, that they did purchase the stock; and the plaintiff claimed that they did not purchase it.

The plaintiff made out his case, in the first instance, by introducing in evidence an account rendered to him by the defendants on or soon after the 19th day of April. The account purported to contain all the accounts between the parties down to April 19, and showed a balance due plaintiff of $8,761.22. The 200 shares of stock did not in any way appear in the account, and hence the plaintiff claimed that they had not, prior to that date, been purchased. The defendants gave evidence that they had purchased them, but this was contradicted; and the circumstance that the stock did not appear in the account was claimed as significant proof against them.

The account rendered was a mere admission by the defendants, in writing, in effect that the account correctly stated all the items of account between the parties. It did not conclude or estop the defendants any more than an oral declaration or admission of the same facts; and they had the right to explain it by oral evidence. (*Stephens* v. *Vroman*, 18 Barb., 250: *Huston* v. *Shindler*, 11 Barb., 36; *Lockwood* v. *Thorne*, 18 N. Y., 285; *Williams* v. *Glenny*, 16 N. Y., 389.) This they offered to do, by the following question: "Why, in the account which has been submitted on the part of the plaintiff, as having been rendered by you, is there no entry or memorandum of the 200 shares of the stock purchased, as claimed by you?" This question was objected to by the plaintiff, and excluded by the court. I think the question was competent. The defendants, in answer to this question, had the right to show that the entry of the 200 shares of stock was omitted by mistake, or at the request of the plaintiff, or in consequence of some custom in making out such accounts, or for some other reason. They

claimed to have purchased this stock, and they had the right
to show why it was omitted from this account, which they
rendered afterward.   A party who has given a receipt admit-
ting payment, has the right always to show by oral evidence
that it was given by mistake, and that it was untrue.   And
he has the right to show how and why he came to give it.
This results from the fact that these written admissions are
not contracts between the parties, and are not binding upon
the person making them, unless made under such circum-
stances that they estop him (which is not and could not be
claimed here), and hence, when introduced in evidence against
the person making them, he has the same right to contradict
or explain them, or in some other way avoid their force, as
he has in reference to any other evidence given against him.
The admissions and explanations go to the jury together, and
they are then to determine how much force the admissions
shall have.

Hence I am clearly of the opinion that the court erred in
excluding the question, and for the same reason the court
erred in excluding the question "do you know the custom
among brokers in relation to rendering accounts to their cus-
tomers when a transaction has not been closed?"   This seems
to have been excluded because the defendants avowed, in
answer to the court, that they did not propose to show that
the plaintiff was notified of the custom.   But it made no dif-
ference whether the plaintiff knew this custom or not.   It
was simply offered to explain the conduct of the defendants.
They had the right to show that, by the custom among brokers,
it was not customary to enter stocks which they were carry-
ing in an account, until the transaction was closed by a sale or
delivery of the stock.   They had the right to show even that
this was their private custom, and that for that reason the
stock did not appear on the account.

I think no harm was done by the exclusion of the offer to
prove the custom of brokers in New York, in reference to
using and dealing with the stock which they have purchased
and are carrying for their customers until it is called for, as I

do not perceive that any claim was made upon the trial that the defendants had become liable by any dealing with the stock after its alleged purchase. The only two questions upon the defendants' liability submitted to the jury were, 1st. Whether they had purchased the stock upon the order of the plaintiff; and 2d. Whether they were ready and willing and properly offered to deliver the stock when called for by the plaintiff. And the offered evidence had no bearing whatever upon either of these questions.

I think that portion of the charge excepted to was right, and even if liable to any criticism, it was certainly free from objection, as subsequently explained. I find no other exceptions in the case deserving consideration, and for the reasons stated, the judgments of the Special and General Terms must be reversed and a new trial granted, costs to abide the event.

For affirmance, LOTT, Ch. C., HUNT, GRAY and LEONARD, CC. For reversal, EARL, C.

Judgment affirmed.