[No. 1038. September 13, 1904.]

## S. B. GILLETT, Appellant, v. E. V. CHAVEZ, Administrator of the Estate of H. L. WARREN, Deceased, Appellee.

### SYLLABUS.

1. In the absence of a motion in the district court to dismiss an appeal from the probate court on the ground that the claimant filed two separate claims against decedent's estate on which separate decrees were rendered, and that the record failed to show which of the decrees was appealed from, such motion was not available in the Supreme Court.

2. Where a probate decree included both of claimant's demands, and recited the allowance of an appeal therefrom, and the cost bond given recited the amount of the two claims in the aggregate as the amount litigated, an objection that the appeal was from separate probate decrees, and that only one was appealed from, cannot be sustained.

3. Errors complained of on appeal will be disregarded where they were not objected to in the trial court.

4. Where one of the members of a firm agreed to act as clerk and keep the books for the sum of $50 per month, to be paid as a part of the firm's expenses, and to receive as a member of the firm one-fourth of its earnings for business, done in a certain judicial district, his salary as clerk was a part of the partnership affairs to be settled in an accounting.

5. Under Compiled Laws 1897, section 3021, providing that in a suit by or against the administrator of a deceased person an opposite or interested party shall not obtain a decision on his own evidence in respect to any matter occurring before the death of the deceased person, unless such evidence is corroborated by other material evidence, the uncorroborated evidence of a member of a firm in an action against the administrator of a deceased partner that a settlement had been had between them prior to decedent's death, and that a balance had been struck in favor of claimant, was insufficient to establish such fact.

6. Compiled Laws 1897, section 2657, providing that courts of chancery shall have concurrent jurisdiction with any other remedy

now provided by law, does not include a proceeding in the probate court by one of the surviving partners of a firm to recover an alleged indebtedness against the administrator of a deceased partner prior to a final settlement of the partnership affairs.

7.   The Code of Civil Procedure provides that there shall be but one form of civil action, and that remedies legal and equitable may be joined. Comp. Laws 1897, section 2657, provides for the appointment of auditors for the settlement of the affairs of a partnership, and section 2651 declares that the widow, children, or heirs of a deceased partner shall abide the result of a settlement, and may continue the business by agreement. *Held* that though an action for the settlement of a firm's business was purely equitable, such provisions did not authorize a proceeding in the probate court by one of the surviving partners of a firm against the administrator of a deceased partner to recover an alleged indebtedness prior to a settlement of the firm's affairs by suit in the district court or by auditors appointed under such statute.

8.   Evidence reviewed, and *held* insufficient to establish a claim by one member of a firm against the executor of a deceased partner for services rendered as clerk to decedent judicially appointed master in chancery.

9.   Where a statement of the affairs of a partnership was made by one of the members of the firm, who acted as the firm's clerk at the request of one of the surviving partners, merely as a basis for a settlement thereafter to be had, and such settlement did not show a balance due from the senior member of the firm, who subsequently died, to the junior member, but showed that the firm was indebted to both senior and junior members, and that the member requesting the account was largely indebted to the firm, the fact that the senior member retained the account without objecting thereto did not render the same an account stated as between him and the junior member.

Appeal from the district court of Bernalillo county before BENJAMIN S. BAKER, Associate Judge. Affirmed.

S. B. GILLETT and W. H. WINTERS for appellants.

All the requirements for taking and perfecting an appeal are deemed jurisdictional, and must be strictly complied with whatever be the method named.

2 Ency. Pl. and Pr., 16, and cases cited.

One partner should sue the other, on balance struck, at law.

Lindley on Partnership, 734-735; George on Partnership, 306-307; Sikes v. Work, 6

Gray, (Mass.) 433-4; Wheeler v. Wheeler, 111 Mass. 257-50.

Assumpsit will lie to recover a final balance of a partnership account.

Brigham v. Eveleth, 9 Mass. 538; Jones v. Harraden, Id. 540; Bond v. Hays, 12 Mass. 34; Wilby v. Phinney, 15 Mass. 116; Fanning v. Chadwick, 3 Pick. (Mass.) 420; Brinley v. Kupfer, 6 Pick. (Mass.) 179; William v. Hinshaw, 11 Pick (Mass.) 79-81; Story on Partnership, sec. 449; Pool v. Perdue, 44 Ga. 454; Pettingill v. Jones, 28 Kas. 535; Fry v. Potter, 12 R. I. 542; Halderman v. Halderman No. 5,909 Fed. Cases; Frank v. Baber, 53 Ill. 294, 1 Story Equity Jurisprudence, sec. 664, note 4; Cooley ᴏᴎ Partnership, 151-153.

A final settlement of the partnership affairs converts the liabilities between each partner and the firm, into liabilities between the partners individually, and an action at law lies to recover the balance found due any partner.

George on Partnership, 315; Purvis v. Champion, 67 Ill. 459; Scott v. Caruth, 50 Mo. 120; Holmes v. Nance, 84 Mo. 674; Kerr v. Hoffman, 65 Pa. St. 126; Mackey v. Auer, 8 Hun (N. Y.) 180; Jaques v. Hilt, 16 N. J. Law 38; Nims v. Bigelow, 44 N. H. 376.

Partners may by agreement separate any part of the partnership business from the remainder, and transform it into a separate and individual obligation as between each other.

17 Ency. Law (1 Ed.), pp. 1261-2: Alexander v. Alexander, 12 La. Ann 588; Carpenter v. Greenop, 42 N. W. 276:

Express Contracts between partners:

George on Partnership, 317: Payne v. Thatcher, 25 Wend N. Y. 450: Aldrich v. Lewis, 60 Miss. 229.

S. BURKHART, for appellee.

No balance between the partners was ever struck.
Willey v. Renner, 8 New Mexico 641:
Wormser v. Landauer, 9 New Mexico 23.
Upon the facts of the case the lower court properly
held that it was without jurisdiction in this proceeding.
Same authorities last above cited.

STATEMENT OF THE CASE.

The record before us discloses, that H. L. Warren,
H. B. Fergusson and S. B. Gillett (appellant), formed a
copartnership for the practice of the law at Albuquerque
New Mexico, on the first day of April, 1895.   This firm
continued in business until July 12, 1898 when by rea-
son of a quarrel between Warren and Gillett, they
ceased to do business and Warren had a notice of disso-
lution published at his own instance.   This firm never
had a settlement of its affairs during its existence, but
at the request of Mr. Fergusson, Mr. Gillett who kept
the books of the firm prepared a statement in writing
which purported to show the amount due by each mem-
ber to the firm and from the firm to each member, as
the case might be.   The only statement of this account
found in the record is as follows:

Judge Warren received...... .....$5,099.47
Credit, Disbursed ...... ......... ....437.83
                                    _____
                                    $4,661.64
Fergusson, received .... ...... ....$7,814.20
Disbursed ........ ......... .........246.10
                                    _____
                                    $7,568.10
Gillett, received .... ........ ......$5,130.04
Disbursed .....:. ............... ......5,057.39
                                    _____
                                    $76.25

July payments received ...... ...... ..51.77

$20.88

This statement of the accounts of the firm was rendered July 12, 1898, but about a month later a collection of $1000.00 was made of which Mr. Gillett received the additional sum, of $747.50 or a total balance of $768.38. Warren and Furgusson shared equally but Mr. Gillett was to act as clerk for the firm and he was to receive fifty dollars ($50.00) per month for such services and one fourth of the receipts from the business done in the Second judicial district.   On the twentieth day of March, 1894, Mr. Warren was appointed special master in the case of the Mercantile Trust Company v. Atlantic & Pacific Railroad Company et al.   On the twenty-third day of March, 1894 the compensation of the master was fixed at $2500 per annum and he was allowed an additional allowance of fifty dollars ($50.00) per month per annum, from April 1, 1894 as and for clerk hire.   The master's services ended March 1, 1897.   After Mr. Gillett became a member of the firm April 1, 1895, an arrangement was made by which he was to receive an additional fifty dollars per month for services as clerk to the special master, and the second claim against said estate is for such services.

It further appears that the special master accounted to Mr. Fergusson for one-half of his fees as special master amounting to several thousand dollars, but when Mr. Fergusson received also one-half of the fifty dollars per month Mr. Fergusson testified he does not know.   Mr. Gillett testifies that he did not receive any part of it.

Mr. Warren died intestate June 22, 1900, and E. V. Chavez was appointed administrator of his estate. This case originated in the probate court of Bernalillo county. The following amended accounts were presented to E. V. Chavez, administrator of the estate of H. L. Warren, deceased, as claims due the appellant from said estate:

"E. V. Chavez, administrator of the estate of H. L. Warren deceased, Debtor to S. B. Gillett.

> "To statement rendered July 12, 1898, $2314.90 with interest thereon from July 12, 1898 to date of payment at the rate of 6 per cent per annum until paid. Territory of New Mexico, county of Bernalillo.

"S. B. Gillett being duly sworn says that the foregoing statement of account is true and correct as stated; that said statement of account was made on or about July 12, 1898, that a copy thereof was then and there delivered (together with the books of the late firm of Warren, Fergusson and Gillett) to H. L. Warren, deceased, and that no part thereof was disputed by the said H. L. Warren, deceased, that said statement of account is the result of an accounting and balance struck at said time between the members of said firm and that no part of said account has been paid. Affiant further states that said books are not in his possession and that he cannot make a detailed statement of said account without access to said books."

"E. V. Chavez, administrator of the estate of H. L. Warren, deceased, Debtor to S. B. Gillett.

> "To services rendered as clerk to the said H. L. Warren as master in chancery in cause No. 999, The Mercantile Trust Company v. The Atlantic and Pacific Railroad Company et al., for the period of twenty-three months, at $50.00 per month ................ .........$1,150.00 Together with interest at the rate of 6 per cent per annum until paid.

"Territory of New Mexico, county of Bernalillo.

"A. B. Gillett, being duly sworn says that the above account is true and correct as stated, that the same is an open account beginning April 1, 1895, and ending March 1, 1897, and that the same is due and unpaid."

Both of the accounts were rejected by the administrator. The accounts were then filed in the probate

court and after hearing were allowed by the following
order:

"In the matter of the claim of S. B. Gillett against
the estate of H. L. Warren, deceased, E. V. Chavez administrator, for the sum of $2,314.90 and $1,150 respectively, the court after hearing evidence pro and con and
the arguments of the attorneys on both sides, approved
both accounts, and from which decision the attorneys
for the estate except and ask appeal from the decision
of the court to the district court of Bernalillo county,
which was granted."

Appeal having been taken to the district court a
trial *de novo* was had before the court, both of the claims
were disallowed and judgment was rendered against the
appellant here, for costs. Appeal was allowed and perfected to this court.

## OPINION OF THE COURT.

McFIE, A. J.—The first error assigned is:

"The court erred in assuming jurisdiction of the
subject-matters herein, because appellant filed two separate claims in the probate court, said court heard the
claims separately and rendered separate decrees in
favor of this appellant. Appellee appealed from one of
said decrees only, and the record does not show from
which of said decrees appellee herein appealed to the district court."

There was no motion made in the court below to dismiss this cause upon the ground stated in this assignment, nor was there objection to the cause proceeding for this reason, the only motion disclosed by
the record was to dismiss for want of a cost bond.
This motion was disposed of by the court without objection. These considerations are sufficient to dispose
of this assignment, but in addition to this, the record
does not support this assignment. The judgment of the
probate court above set out included both of appel-

lant's demands and the judgment recites allowance of appeal therefrom. The cost bond given by the appellee, recites the amount in the aggregate and the trial shows that the entire amount was litigated, without objection upon the trial *de novo* in the district court.

Errors invited, waived or immaterial are not available in this court. Chavez v. Myers, 68 Pac. (N. M.) 917; Jung v. Myers, 68 Pac. (N. M.) 923.

Errors complained of, will be disregarded, where no objection was made in the lower Court. Neher v. Armijo, 66 Pac. (N. M.) 518.

The second assignment of error goes to the merits of the case, and will be considered together with assignment five. They are as follows:

"2. Appellant's testimony in support of his said claim was fully corroborated and the court erred in refusing to render a decree in favor of this appellant."

"5. The court erred in deciding that it had no jurisdiction in the premises, because the evidence showed a balance had been struck and that most of the amounts claimed was for salary, and not unsettled partnership affairs at all. And for the many other good and sufficient reasons apparent on the face of the record."

That a partnership existed between Warren, Fergusson and Gillett from the first day of April, 1895, to the twelfth day of July, 1898, is not denied, and it is made clear by the proof, that all of the demands of the appellant, except the claim for interest, arose during the existence of the partnership. The court below found, first, that the claim for $2314.90 arose out of an unsettled partnership account; and, second, that the appellant failed to sustain the claim by the evidence. Error is assigned as to both of these conclusions.

As indicated by the fifth assignment of error, appellant claims that such portion of the amount above stated as was due him for services as clerk of the firm, was no

part of the partnership affairs. Appellant testified that $1970 of the amount was for salary as clerk. This contention is not sound under the evidence in the record. That Mr. Gillett was to act as clerk, and keep the books is true but this was only a matter of convenience to the firm, and, by way of assurance that if he became a member of the firm he should receive compensation to this extent, at least. But this arrangement for fifty dollars per month as clerk and also for a one-fourth interest in the earnings for business done in the Second judicial district were a part of the agreement by which the partnership was formed, and the fifty dollars was to be paid from the partnership receipts as expenses of the firm. The testimony is all to this effect. On page twenty-five of the transcript Mr. Fergusson, answering the question "Q. Was he a partner or not up to the time of the quarrel?" testified as follows: "A. Yes, sir. We permitted his name to appear in the firm and he was paid partly by certain percentage of the firm's collections in cases in this district, and by salary."

Mr. Fergusson testified:

"The Court: Was he to pay one-fourth of the expenses?

"A. Yes sir.

"Q. That is to say, the expenses were to be deducted in the general account—

"A. The balance was to be divided—the one-fourth of the net profits.

"Q. And he was to participate in net losses?

"A. I presume that would follow. We never contemplated that.

"Mr. Burkhart:

"Q. As I understand it, Mr. Fergusson, the expenses of the office were to be paid by Mr. Gillett out of the fees which came into the office, including his own clerk hire as part of the expenses of the office, and then under the agreement whatever was left was to be di-

vided three-eighths to you, three-eighths to Judge War-ren and one fourth to Gillett?"

Mr. Fergusson was a witness for the appellant, and the testimony of the appellant—the only other witness—was in substantial accord with that of Mr. Fergusson, upon this point. Appellant bases his claim to this amount upon a balance struck at a settlement had between the members of this firm, of their partnership affairs. This contention presupposes that the whole claim was included in the partnership affairs and settlement. The appellant testified that on the twelfth day of July, 1898, he prepared an account showing the status of the partnership affairs up to that date, as shown by the books. This statement of account appears in full in the statement of the case. From that statement, it appears, that the firm was indebted to Mr. Warren in the sum of $212.65; The firm was indebted to Mr. Gillett, $2481.16; Mr. Fergusson was indebted to the firm, $2693.81.

It is evident that some changes were made after this account was prepared, as the amount claimed by the appellant is less than the amount here shown to be due him.

The appellant testified, that a settlement was made of the partnership affairs up to July 12, 1898, based upon this statement; that all of the partners were parties to it; that by agreement of all, the firm owed him $2,314.90 and that a balance was struck in his favor for that amount. The account filed in the probate court being for a balance struck upon settlement and account stated, and such being the case on the trial *de novo* in the district court also, the appellant must recover, if at all, upon this basis.

This being an action against an administrator of a deceased partner, the appellant cannot, recover upon his own uncorroborated testimony. Section 3021, Compiled Laws, 1897, is as follows:

"In a suit by or against the heirs, executors, admin-

istrators or assigns of a deceased person, an opposite or interested party to the suit shall not obtain a verdict, judgment or decision therein, on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is corroborated by some other material evidence." Gildersleeve v. Atkinson, 6 N. M. 250.

Searching then for any testimony in corroboration of appellant's testimony as to the settlement of the partnership affairs of the firm, we have been unable to find any such testimony. Mr. Fergusson, a witness for the appellant, testifies that Mr. Warren persistently refused during his lifetime to settle the affairs of the firm so far as Mr. Gillett was concerned; that he at all times disputed the correctness of Mr. Gillett's statement of account and that no such settlement occurred prior to the death of Mr. Warren. This testimony of Mr. Fergusson is decisive of two propositions both of which are fatal to the appellant: first, that there never has been a settlement of the partnership affairs of the firm of Warren, Fergusson & Gillett and an account stated and balance struck as claimed; . . . second, that appellant's testimony is without corroboration upon this issue. The testimony of Mr. Fergusson is controlling for the further reason that the appellant is bound by the testimony of his own witness.

The court below held that the appellant had failed to maintain his case by proof as to his claim, and was clearly right in so holding. If there was no settlement of the partnership accounts of this firm and an account stated between them by the striking of a balance in favor of the appellant prior to the institution of this proceeding in the probate court, the appellant had no standing in that court, his remedy being in the district court for a settlement. Willey v. Renner, 8 N. M. 641; Wormser v. Lindauer, 9 N. M. 23.

These cases were decided prior to the adoption of the present code of civil procedure, which provides that

there shall be but one form of civil action, and that remedies both legal and equitable may be joined herein; but these cases are still in point, for the reason, that although it may now be necessary to institute a civil action for the settlement of partnership accounts, it would still be a matter of equitable cognizance, as the code further provides, that where the subject-matter of the action would have been purely equitable, prior to the adoption of the code, when such suit is instituted after the adoption of the code it shall proceed according to the rules of equity. But there was also a statutory remedy open to the appellant, for the settlement of the partnership accounts of the firm, and which was cognizable only in the district court.

Section 2657 A. C. L. 1897, provides, that: "When any partner of a joint partnership business shall refuse or neglect at the request of any other partner, to come to a settlement with him or them, of the affairs of said joint partnership business, it shall be lawful for any memeber of said firm to present a petition to the district judge, in vacation or term time, stating under oath, the name and nature of the firm, and that one or more of said partners refuses or neglects to come to a settlement concerning such partnership business, asking said district judge to appoint three competent auditors to adjust the accounts between the said partners. Waldo v. Beckwith, 1 N. M. 182.

Section 2651 provides that the widow, children or heirs of a deceased partner, shall abide the result of a settlement of the partnership affairs, and they may continue the business by agreement.

While is is provided in section 2657 that "Courts of chancery shall have concurrent jurisdiction with any other remedy now provided by law," we are of the opinion that the phrase "any other remedy now provided by law," does not include a proceeding in the probate court prior to the final settlement of partnership affairs, even in cases where the death of a partner has intervened.

The second claim of the appellant is for $1150 which he testified to be due him for salary as clerk to Mr. Warren, while Warren was special master in the case of The Mercantile Trust Company v. Atlantic & Pacific Railroad Company, et al.

Appellant testified that Mr. Fergusson made an arrangement with Mr. Warren, at appellant's request, by which appellant was to act as clerk to the special master and receive fifty dollars per month for such services; that he did perform the services from April 1, 1895 until the first of March, 1897 when Warren's services as special master ceased, and that he did not receive any compensation for his services. The records of the court in the case above referred to were introduced in evidence, showing an order of the court allowing Warren, as such special master, clerk hire at the rate of fifty dollars per month per annum.

The appellant, however, cannot recover upon his own testimony, as this is also a claim against an administrator in which he is an interested party. The testimony of Mr. Fergusson, the only other witness produced by the appellant, must be examined as the source of corroboration. Mr. Fergusson corroborates the testimony of the appellant as to the arrangement for appellant to act as clerk to the special master; that he performed services and was to receive fifty dollars per month "if the court allowed the same." The order allowing Mr. Warren clerk hire was made March 25, 1895, but related back to April 1, 1894, and is as follows:

"And that he be and is hereby allowed the sum of fifty dollars per month per annum from April 1, 1894, as and for clerk hire the above to be in full compensation for all services rendered and to be rendered, except as heretofore otherwise ordered."

This allowance as made to Warren, not to Gillett, and it provided for clerk hire for a year prior to the arrangement with Gillett. Mr. Gillett testified that Mr. Warren received this money, but there is no corrobora-

tion of this testimony.    Mr. Fergusson testified that he does not know and there was no other evidence upon that point.  Therefore, that Warren received this money, was not established by the evidence.    Mr. Fergusson having testified to Judge Warren's appointment as special master, he was asked this question by the court:

"Q.  Was that a partnership matter with you?  A. Yes, sir; it was understood when we became partners that whatever either one made outside, except in such a matter as a private investment of a lot or the like, or anything that would come in the way of master's fees or referee's fees, or anything like that should be divided, and as a matter of fact Judge Warren accounted for what he made as master when we had our settlement.

"Q.  Was this part of the partnership affairs of Warren, Fergusson and Gillett or of Warren and Fergusson?  A.  There was nothing said by any of us on that point.

"By Court:  When you and Mr. Warren settled, you divided half and half the profits in the master matter.  A.  Yes, sir."

Mr. Fergusson further testified:

"Q.  Then the services rendered by Mr. Gillett as clerk in the foreclosure suit—clerk to the master—was entirely extra and outside; it was really for the firm of Warren & Fergusson?  A. Practically so, because Warren finally accounted to me.

"By Mr. Burkhart:  Q.  To be paid out of the allowance to be made by the court?  A.  Yes, sir, Mr. Burkhart is right about that; Warren and Fergusson would not have owed Gillett a cent if the court had ultimately not allowed Gillett a cent as clerk hire.

"By the Court:  Did the court allow clerk hire?  A. I do not know; I think so; that is my information; I have never looked it up.

"Whatever was received by Judge Warren as master went into the assets of the firm of Warren & Fergusson and were divided—  A.  I do not know whether he

divided that with me or not—I would not have claimed that."

During the time Gillett's account accrued, both he and Warren were members of the firm of Warren, Fergusson & Gillett, and if Warren received the money and failed to pay Gillett, in a settlement of the partnership affairs of Warren, Fergusson & Gillett, it would be necessary to take this matter into account and this would be true, especially, if Warren accounted with Fergusson in their settlement, as Mr. Fergusson testifies he did not know whether he did or not. This is certainly not a denial that the money was accounted for between Warren & Fergusson. It is true, Mr. Fergusson testified that he and Warren regarded the former firm of Warren & Fergusson as still in existence after Gillett became a member, but that will not do as a matter of law, as the firm of Warren, Fergusson & Gillett conducted business as such for more than three years under a partnership agreement binding upon all. We are, therefore, unable to regard this claim as an individual claim against the estate of Warren, but on the contrary regard it as an item of the partnership affairs of the firm of Warren, Fergusson & Gillett of which there has not been a final settlement. There are two considerations disclosed by the record which makes apparent the necessity for a settlement of the affairs of this partnership before the estate of deceased shall be called upon for payment. The statement prepared by Mr. Gillett shows that Mr. Fergusson owed the firm July 12, 1898, $2,693.81. This amount is more than sufficient to pay the indebtedness to both Warren and Gillett. Mr. Gillett testified that Mr. Fergusson, although promising to do so, has not paid him any part of his claim. This statement also shows that Mr. Gillett received as a member of the firm $5,130.04 and that he had paid out for expenses $5,109.16. On page 29 of the record, Mr. Fergusson testified as follows:

"Mr. Burkhart: Q. As I understand it, Mr. Fergusson, the expenses of the office were to be paid by Mr. Gillett out of the fees which came into the office, including his own clerk hire as part of the expenses of the office, and then under the agreement whatever was left was divided three-eighths to you, three-eighths to Judge Warren and one-fourth to Gillett? A. Yes, sir; of course, we did not go into details and eighths were not mentioned."

According to this testimony, Mr. Gillett's fifty dollars per month compensation as clerk of the firm, was considered expenses to be paid from the firm's receipts and which the evidence further shows was to be paid by Mr. Gillett. The statement shows that Mr. Gillett paid out $5,109.16 of the firm's money for expenses. His own compensation was understood to be expenses; he was given full authority to deduct the amount due him from the money in his hands, and yet, after the expiration of three years, he files a claim, which he insists, is for clerk hire for the entire time of his service. Counsel for appellee insists that Mr. Gillett deducted his wages from the money in his hands and that this was part of the expenses which he claims to have paid. It is impossible to ascertain the facts as to this, as the trial below proceeded upon the theory of a settlement and account stated, and the facts were not brought out, even to the extent of the production of an itemized account of disbursements for expenses. It does not seem reasonable, that Mr. Gillett with more than five thousand dollars of the firm's money in his hands, from which he was authorized to pay his compensation as clerk, would serve as such, for more than three years, without any compensation, as this statement tends to show. If Mr. Gillett has been paid, as counsel for appellee contends, he has no right to recovery on his first claim, therefore, a settlement of the affairs of this firm, is absolutely necessary as a basis for a claim against the estate of the deceased partner.

Counsel for appellant, in this court, sought a reversal of the case mainly upon the doctrine than an "account rendered" not objected to within a reasonable time becomes an "account stated," and is not subject to impeachment except for fraud or mistake. This doctrine is well supported by the authorities cited by counsel and which are conclusive if the facts bring the case within the doctrine.   The facts of each case must be considered in determining the applicability of the doctrine, to the case in hand.   In any event it could not apply to the claim for $1,150, as there is no evidence that this item was included in any statement, settlement or balance.   With reference to the claim for $2,314.90 the question in the lower court was whether or not there had been a settlement in which a balance was struck for the last named amount.   At common law, to constitute an account stated, two things were necessary.   First, that there be a mutual examination of the claims of each other by the parties; and, second, that there be a mutual agreement between them, as to the correctness of the allowance and disallowance of the respective claims, and of the balance, as it is struck upon the final adjustment of the whole account and demand on both sides.   The minds of the parties must meet upon the allowance of each item or claim allowed, and upon the disallowance of each item or claim rejected.   They must mutually concur upon the final adjustment, and nothing short of this in substance will fix and adjust their respective demands as account stated.   Lockwood v. Thorne, 18 N. Y. 286.

The nature of an account stated is that the parties consider the claims, and strike a balance, to which the vouchers may be destroyed, and the balance may not be disputed.   It is an agreement by both parties that the items are true.   The consideration of the promise is the stating of the account.   To prove the items is not necessary, as the action is not upon them, but upon the

defendant's consent to the balance ascertained.   It exists only where the accounts have been examined, and the balance admitted as the true balance between the parties.   Reinhardt v. Hines, 51 Miss. 344; Stenton v. Jerome (54 N. Y.), 480.

The consent of the parties to the balance claimed is what imparts to an account the character of an account stated.   The acknowledgment by the debtor that a certain sum is due creates an implied promise to pay; and in an action upon an account stated it is not necessary to set forth the subject-matter of the original debt. Foster v. Allanson, 2 Term R. 480; Fitch v. Leitch, 11 Leigh (Va.) 471; Hoyt v. Williamson, 10 Pick. 31; Tassey v. Church, 4 Watson Serg. 141.

As to the conclusiveness of accounts stated it was held in the case of Bartlett v. Emery, 1 Term R. 42, and note, that to entitle a plaintiff to recover it was sufficient if the plaintiff proved the account stated and this would be conclusive; but in modern times a greater latitude has prevailed and errors which may have crept into an account may now be shown and corrected.   It is now held that an account stated is a mere admission that the amount is correct.   It is not an estoppel.   The account is still open to impeachment for mistakes or errors.   Its effect is to establish, prima facie, the accuracy of the items without other proof; and the party seeking to impeach it is bound to show affirmatively the mistake or error alleged.   The force of the admission, and the strength of the evidence which will be necessary to overcome it, will depend upon the circumstances of the case. Lockwood v. Thorne, 18 N. Y. 285; Champion v. Jocelyn, 44 N. Y. 653.

In the case of Toland v. Sprague, 12 Peters 300, the court says:

"We agree with the court that the mere rendering an account does not make it a stated one; but if the other party receives the account, admits the correctness of the items, claims the balance, or offers to pay it, as

it may be in his favor or against him, then it becomes a stated account."

The appellant in the court below insisted that there had been a settlement of the partnership affairs of the firm of Warren, Fergusson and Gillett. That a balance was struck in favor of the plaintiff to which all the parties agreed. This would clearly make out a claim of account stated. As has been said above in this opinion, the evidence does not sustain this contention there being no corroboration in the record of the appellee's evidence to that effect. The record, therefore, does not present a case to which the doctrine contended for by the counsel who argued the case orally, that an account rendered became an account stated because not objected to within a reasonable time can be applied. It is true, that Mr. Gillett made a statement of the affairs of this partnership as taken from the books which he kept. But this statement was made at the request of Mr. Fergusson merely as a basis for a settlement thereafter to be had between the members of this copartnership. It was not an account rendered in the sense of those of a merchant or banker to their customers showing a specific balance due. This statement was made for an entirely different purpose, and it would seem to be a great hardship to apply this doctrine to a statement made as a basis for a settlement between partners, among whom, a trust relation exists. Furthermore, this statement as we find it in the record, does not show a balance due from Warren, the deceased partner, to Gillett; on the contrary, the firm is indebted to both Warren and Gillett. Therefore, there was nothing due which a failure to object within a reasonable time would have the effect of admitting. The account disclosed an indebtedness to the firm by Mr. Fergusson to the amount of $2,693.14 but the indebtedness of Mr. Fergusson is not involved in this case, so that in every view which it seems proper to consider this case, the necessity for a final settlement of the partnership affairs becomes apparent, as a basis for

any charge being made against the estate of Warren, deceased. The second and fifth assignments of error, therefore, fail to point out error in the judgment of the court below and must be overruled. It is not deemed necessary to consider at length assignments of error numbers three and four, as they are not sufficiently specific to warrant the court's consideration under numerous decisions of this court.

The judgment of the court below is affirmed, and it is so ordered.

Mills, C. J., Parker, and Pope, JJ., concur.

Baker, A. J., having heard the case below, and Mann, A. J., not having heard the argument in this court, did not participate in this decision.

